Carl Lowe v. Frank Stoutamire, as Sheriff of Leon County

166 So. 310.
Opinion Filed February 29, 1936

*Leo P. Kitchen,* and *Dan R. Schwartz,* for Petitioner; *Theo T. Turnbull,* for Respondent.

DAVIS, J.—The salient facts before this Court are that Carl Lowe, the petitioner in habeas corpus herein, was arrested in Leon County, Florida, on October 31, 1935, on a warrant issued by Hon. W. May Walker, County Judge, wherein and whereby it was charged that said Lowe operated an International Truck, a mortor vehicle, for the transportation of property for compensation over the public highways of said county, without having a permit under Chapter 14764, Acts 1931, Laws of Florida, to operate said motor vehicle for hire; (2) that said Carl Lowe without authority from the Interstate Commerce Commission of the United States, as required by the Federal Motor Carrier Act of 1935 (U. S. Interstate Commerce Act as amended by Chapter 8, 49 U. S. Statutes), unlawfully operated said motor vehicle for hire over Florida Highways in Leon County without complying with said U. S. Motor Carrier Act of 1935; and (3) that the said motor vehicle was operated for hire by the defendant named in the warrant

without his having applied to the Florida Railroad Commission for a designation of route within the State of Florida and absent the designation of any route therefor by the Railroad Commission of the State of Florida; that on the date of his arrest said Carl Lowe was a driver and employee of L. & L. Freight Lines, Inc., and was engaged in the course of his employment in driving a motor vehicle belonging to his employer; that at the time of the driver's arrest the motor vehicle in question was loaded only with freight originating at points outside of the State of Florida, which freight had come into the defendant's possession outside of the State of Florida destined for delivery in the State of Florida; that the L. & L. Freight Lines, Inc., had undertaken to engage in interstate commerce only over the highways described in an application for Certificate of Convenience and Necessity filed by it with the Florida Railroad Commission on October 8, 1935; that at the time of petitioner's arrest he was operating his employer's vehicle only on such highways as were described in the aforesaid application; that although the application to the Florida Railroad Commission had been duly filed on October 8, 1935, the said Commission had taken no steps with reference to said application either looking toward the denial or the granting of same.

As grounds for his release from custody, the prisoner asserts a privilege and immunity claimed to have been exercised by him according to the laws of the United States—"Motor Carrier Act, 1935," Sections 201-227, inclusive, Interstate Commerce Act of the United States, Part II, approved August 9, 1935—in that the motor vehicle operation for which he was arrested was at the time being carried on solely in interstate commerce, and by reason of that fact, was, under the terms of said "Motor Carrier Act,

1935," and Article 1, Section 8, Clause 3 of the Constitution of the United States, beyond the reach of criminal statutes of the State of Florida insofar as they intended to hinder, delay, embarrass or punish the privilege of engaging in interstate commerce by motor carrier for hire pending the actual putting into operation by the Interstate Commerce Commission of the United States of the administrative details required to be performed and carried out by said Commission with reference to certificating motor carrier operations such as that in which the petitioner was engaged in at the time of his arrest.

Paragraph (c) of Section 202 of the United States "Motor Carrier Act, 1935," provides in terms that nothing in the Federal Act shall be construed to affect the powers of taxation of the several states, or to authorize a motor carrier to do an interstate business on the highways of any state, or to interfere with the exclusive exercise by each state of the power of regulation of intrastate commerce by motor carriers on the highways thereof.

The necessary intendment of this clause of the U. S. "Motor Carrier Act, 1935," as we construe it, is that insofar as any state has previously set up, and put into operation a system of statutory provisions for regulating traffic and commerce on the state's highways by motor carriers for hire or compensation, that all state made statutory regulations referrable to the state's inherent powers of taxation, the state's police authority to reasonably conserve its proprietary rights in its roads as an incident to its right of ownership thereof by imposing *non discriminatory* regulations as to use applicable to all traffic generally, whether interstate or intrastate, and the state's powers to exercise complete and sole regulation of all intrastate commerce and traffic by motor carriers on state highways, remain sever-

ally undiminished and unimpaired by the Federal Act aforesaid.

This view of the law leads to the inescapable conclusion that the United States "Motor Carrier Act, 1935," did not supersede nor impair the operation of Chapter 14764, Acts 1931, Laws of Florida, insofar as that Act has heretofore required interstate motor carriers to apply for and obtain from the State Railroad Commission a certificate of registration* showing the nature of the interstate operation privilege being exercised, and has compelled observance of those provisions of the Act sustained by the Federal Courts as heretofore capable of being enforced against interstate motor carriers.

In Alkazin v. Wells, 47 Fed. (2nd) 904, Chapter 13700, Acts 1929 (which Act of 1929 has been superseded by Chapter 14764, Acts 1931) was upheld by a three-judge Federal Court as a proper exercise of the state's power insofar as it had been construed and applied to make it applicable to motor carriers for hire engaged exclusively in interstate commerce in the following particulars only; registration and obtaining from the state of a formal certificate or permit to operate in interstate commerce, such certificate being grantable as a matter of right and as of course whenever appropriately sought; payment of prescribed mileage taxes exacted by the State of Florida as compensation for use of its highways; appropriate police regulation reasonably adopted to conserve the state's property rights in the highways, as well as to protect the comfort, safety and convenience of citizens and the traveling public on the highways; or pertaining to the speed at which vehicle may travel, or requiring a statement of routes traveled, schedules

---

*Misnamed "Certificate of Public Convenience and Necessity" as applied to interstate motor carriers.

followed and rates charged to be filed with the State Commission; to give security for the protection of third parties from negligence due to improper use of the state's highways, etc. The law of that decision still prevails in the State of Florida, despite the enactment by Congress of the U. S. "Motor Carrier Act, 1935," which is dominant over the laws of the State of Florida only insofar as the State and Federal law and regulations may be in conflict.

The mere enactment of the "Motor Carrier Act, 1935," by the U. S. Congress did not *ipso facto* suspend nor *eo instanti* supersede, the laws of the State of Florida applicable to interstate motor carriers, but left those laws to be co-operatively applied insofar as they can be so applied without overriding, hindering, burdening or embarrassing the regulations of Congress applicable to the identical subject matter. Not ony the context of the "Motor Carrier Act, 1935," construed as a whole, but a view of it in the light of its legislative history, demonstrates no purpose on the part of Congress to occupy the whole field of permissible regulation in interstate motor carriage.

Accordingly this case is to be distinguished from the rule of Southern Ry. Co. v. Railroad Commission, 236 U. S. 439, 59 L. Ed. 661, 35 Sup. Ct. Rep. 304 (reversing 179 Ind. 23, 100 N. E. Rep. 337) wherein the nature of the power of Congress in the premises was such that, when exercised with reference to the equipment of an interstate railroad, it was necessarily exclusive and *ipso facto* superseded state legislation on the same subject. Furthermore, a consideration of the state's proprietary interest in the roads it has constructed, which roads it is required to maintain and protect in order that viatic highways may be conserved for use in both interstate and intrastate motor travel, serves to vindicate our construction of the Federal Motor Carrier Act

of 1935 as being congressional legislation of the subject of interstate motor carriage circumscribed to the limited field wherein specific jurisdiction has been given to the Interstate Commission to investigate, determine the status of, and thereupon license interstate motor carriers for interstate commerce operation, and to make and enforce appropriate administrative regulations as authorized therefor by Congress. See: Clyde Mallory Lines v. State, *ex rel.* State Docks Commission (decided December 9, 1935), 80 L. Ed. Adv. Opinions, page 191, 56 Sup. Ct. Rep. 194, affirming 229 Ala., 624 159 Sou. Rep. 53.

The present case disclosed a conflicting claim of right between the petitioner as defendant and the Florida Railroad Commission as his actual prosecutor. The accused is in custody under criminal process. That process appears valid on its face and is sufficient to constitute a charge of violation by the accused of the criminal provisions of Chapter 14764, Acts 1931, General Laws of Florida, ample in law to sustain the holding of the accused for appropriate prosecution and trial, unless the accused shall have made it to appear that because of the superogatory provisions of the United States Motor Carrier Act of 1935, a prosecution in the state courts for the Act charged against him is no longer sustainable under the circumstances shown to exist by the record now before us on habeas corpus. Annenberg v. Coleman, 121 Fla. 133, 163 Sou. Rep. 405.

It does not appear that Chapter 14764, Acts of 1931, has been entirely put in abeyance or suspended by the U. S. Motor Carrier Act of 1935, approved August 9, 1935. That being true, whatever privilege or immunity the accused may have acquired under that Federal statute by virtue of the facts peculiar to his particular situation, may be exhibited to the trial court as a matter of affirmative defense to the

prosecution, it appearing that the prisoner has exhibited up until this time no certificate or other documentary evidence from the Interstate Commerce Commission confirming his factual right·to the immunity that he asserts is his as a matter of law.

The prisoner is accordingly remanded to the custody from whence he came, thereupon to be dealt with according to law and in keeping with the rights of the accused under Federal law as they may be made to appear.

Prisoner remanded.

WHITFIELD, C. J., and ELLIS, TERRELL, BROWN and BUFORD, J. J., concur.