STATE, *ex rel.* R. C. MOTOR LINES, v. FLORIDA RAILROAD COMMISSION.

166 So. 840.
Opinion Filed March 28, 1936.

*Leo P. Kitchen* and *Dan R. Schwartz,* for Relator;

*Theo T. Turnbull* and *Claude Ogilvie,* for Respondents.

DAVIS, J.—This was a mandamus to require the Florida Railroad Commission to grant to the relators a certificate of registration (Public Convenience and Necessity) to engage as an exclusively interstate operator in private contract carriage by motor vehicle from Baltimore, Maryland, to Jacksonville, Florida, over that certain portion of the public road from the border of the State of Florida, to Jacksonville, Florida, known as State Highway Route No. 3, U. S. Highway Route No. 17.

The Railroad Commission asserts in defense of its position that although the application here involved was filed by relators prior to the enactment by Congress of the "Motor Carrier Act, 1935" (U. S. Interstate Commerce Act, Part II, as amended by Chapter 8, 49 U. S. Statutes, approved August 9, 1935) that it (the Railroad Commission of Florida) was vested with statutory authority to hear and determine, despite its own representation to the Federal Court

to the contrary made in Alkazin v. Wells, 47 Fed. (2nd) 204, that under State law the relators' application for registration of an exclusively interstate commerce operation of motor vehicles in private contract carriage should be denied, instead of granted as a matter of course, when and after its exclusive interstate character was made to appear at the hearing set for that purpose.

We have recently held in effect in the case of Carl Lowe v. Stoutamire, Sheriff, 123 Fla. 135, 166 Sou. Rep. 310 (opinion filed February 29, 1936, at the present term) that under the statutes of Florida (Chapter 13700, Acts 1929, as amended and re-enacted by Chapter 14764, Acts of 1931), the statutory requirement of a certificate of public convenience and necessity for an *exclusively interstate* motor carrier operation was in legal effect nothing more than a requirement for registration of such an operation for the purpose of identifying it as such and applying to it the State's mileage tax charge for use of the highways and the State's police regulations pertaining to such operations as a means of promoting the public safety, and that being such, every application for an exclusively interstate operation of a motor carrier, was grantable to the applicant under the Florida statute as a matter of course after a reasonable opportunity had been afforded to the Railroad Commission to investigate and determine its *bona fides* and identity as in operation that was in truth and in fact exclusively interstate in character.

Under the United States Constitution, the Commerce Clause (Clause 3, Section 8 of Article I) *ex proprio vigore* amounts to a national certificate of public convenience and necessity for the free and untrammeled carrying on by every one of interstate commerce, and of interstate carriage per-

taining thereto, and only Congress has the legislative power to prescribe special conditions, limitations and restraints upon the *prima facie* constitutional right of every person to freely. engage in interstate commerce as a matter of national convenience and necessity for the welfare of the Union, absent any special Federal legislative provisions of law providing for the special licensing of particular individuals to carry on such interstate commerce, or conduct carriage operations pertaining thereto.

While, as we have held in the recent case of Lowe v. Stoutamire, *supra,* the United States Interstate Commerce Commission now has had vested in it the sole and exclusive jurisdiction to hear, determine, pass upon and decide whether or not to grant an application for a Certificate of Public Convenience and Necessity to engage in any exclusively interstate motor carriage operation, the mere vestiture of such jurisdiction in the Interstate Commerce Commission by the "Motor Carrier Act, 1935" has by no means suspended or superseded the co-ordinate requirement of Chapter 14764, Acts of 1931, that operate to impose upon interstate, as well as intrastate motor carriers without discrimination one against the other, the statutory duty to register their particular operations with the Florida Railroad Commission and thereupon to pay to the State of Florida its just mileage taxes imposed alike upon all motor carriers indiscriminately as a prescribed measure of compensation for use of the State's highways.

Nor does the sole and exclusive jurisdiction of the Interstate Commerce Commission to grant or deny a national Certificate of Public Convenience and Necessity to interstate motor carriers, foreclose or impair the power of the State of Florida that had already been exercised under Chapter 14764, *supra,* to require that any and all interstate

certificates so granted by the Interstate Commerce Commission of the United States shall be registered with the Florida Railroad Commission as a means of identifying the nature, quality and extent of the interstate operations intended to be carried on thereunder, so that the State of Florida, through its own agencies may impose and enforce with reference to the same, all of its non-discriminatory traffic regulations designed to effectuate the State's police power for the promotion of the public safety of traffic generally that may move on and along the State's publicly owned roads.

In the present case the record shows that relators were, at the time they applied for a registration of their operation with the Florida Railroad Commission, exclusively engaged in an interstate commerce operation by private contract motor carrier. Therefore, under the State law as construed by the Railroad Commission itself, and accepted as such by the Federal Courts in Alkazin v. Wells, 47 Fed. (2nd) 904, the Florida Railroad Commission was without any discretion whatsoever to do other than grant the certificate of public convenience and necessity when sought by relators for an exclusively interstate operation, when and after *bona fide* character as such was made to appear, as it was in this case.

Whatever right the Railroad Commission of the State of Florida may have vested in it under Chapter 14764, Acts 1931, to specially determine, after hearing, that a particular route being used for an interstate motor carrier operation is so congested that another route not so congested should be designated and used as an alternative, its exercise is in its essence the application of the State's police power and goes solely to the State's authority to route the traffic moving in commerce generally after the proper certificate therefor has been granted as a matter of course to the holder to en-

gage in the motor carrier business of which the traffic itself is merely a part. The power cannot be so exercised by the State Commission as to become an instrument for burdening or controlling the holder's right to engage in the business of carrying on interstate commerce as a lawful business, because the right to do that is a Federal constitutional privilege with which the State has only a limited power to interfere in proper cases. See: Bradley v. Public Utility Commission, 289 U. S. 92, 53 Sup. Ct. Rep. 577, 77 L. Ed. 1053, 85 A. L. R. 1131.*

In this case the certificate applied for was on July 10, 1935, the date it was denied by the respondent, Railroad Commission, grantable as a matter of course. Consequently the Railroad Commission, being without any discretion whatsoever to deny the applicant the certificate applied for that it was in law bound to grant as a matter of course under the showing made to it by the applicant and admitted as such for the purpose of this hearing by the briefs of the Railroad Commission, is amenable to the writ of mandamus which lies always to decree the performance of an act which according to law and right, ought to have been done by an administrative body at the time it was refused or denied.

---

*The Florida statute (Chapter 14764, Acts 1931) is materially unlike the Ohio statute dealt with in the cited case. Under the Ohio statute a complete remedy to petitioner was at all times afforded to apply for and obtain an alternative route when the particular one for which he had made his application was denied. The Florida statute pertaining to the grant or denial of certificates made adequacy of existing facilities, as well as the public congestion of the highways, the test of whether or not they shall be granted, therefore the rule of Buck v. Kuykendall, 267 U. S. 307, 45 Sup. Ct. Rep. 324, 69 L. Ed. 623, and of Bush v. Maloy, 267 U. S. 317, 45 Sup. Ct. Rep. 326, 69 L. Ed. 627, applies to the granting of such certificates *vel non.*

Where the lega'l duty to act in the premises is clear, and there can be but one conclusion lawfully reached concerning the prescribed course of action for an administrative body (like the State Railroad Commission) to follow under the special showing made, and under the statutes shown to be applicable thereto, mandamus, as well as certiorari, may lie to secure legal redress for the unauthorized denial of a petitioner's rights arising out of an appropriate appplication addressed to, considered and denied by the administrative body because of an erroneous application to it of the law under which petitioner's rights were required to be decided by the administrative body. See: State, *ex rel.* West Flagler Amusement Co. v. Rose, 122 Fla. 227, 165 Sou. Rep. 60; West Flagler Amusement Co. v. State Racing Commission, 122 Fla. 222, 165 Sou. Rep. 64.

The subsequent taking effect of the Federal "Motor Carrier Act, 1935," is without importance to the present case for the reasons pointed out in our decision in Lowe v. Stoutamire, *supra,* decided February 29, 1936.

Peremptory writ of mandamus awarded.

Whitfield, C. J., and Ellis, Terrell and Buford, J. J., concur.

Brown, J., dissents.

Brown, J. (dissenting).—It appears that there has been a hearing before the Commission on this application for Certificate of Public Convenience and Necessity, evidence taken and an order made. The remedy, therefore, is by certiorari, not by mandamus. The Motor Carrier Act of Congress was adopted after this application was filed under that Act. As I understand it, the State Commission has no authority to grant the sort of certificate applied for. But if it be deemed an application for a certificate of registration,

I think the Florida Commission has a certain degree of discretion, as to route, etc., to protect Florida roads, which cannot be controlled by mandamus.