### In re SOUTH FLORIDA FREIGHTWAYS, Inc.

Railroad & Public Utilities Commission.

November 15, 1955.

Kitchen & Schwartz, Jacksonville, for respondent.

Craig Massey, Tampa, for Central Truck Lines, Inc. and Great Southern Trucking Co.

J. Edward Allen, Jacksonville, for Great Southern Trucking Co.

E. T. Hamil, director, transportation department, and Guyte P. McCord, Jr., assistant general counsel, for the commission.

Chairman WILBUR C. KING, commissioners JERRY W. CARTER and ALAN S. BOYD participated in the disposition of this matter.

BY THE COMMISSION.

On August 10, 1955 this commission in order #3151 charged the respondent South Florida Freightways, Inc. with wilfully violating the provisions of chapter 323, Florida Statutes 1953, the rules and regulations of this commission governing motor transportation in Florida, and the terms of its common carrier certificate of public convenience and necessity #358 heretofore issued by this commission, in that it had transported and was continuing to transport property over the highways of the state outside the territorial scope of said certificate without having applied for or obtained from this commission proper authority therefor.

A hearing was held pursuant to order #3151 for the purpose of investigating the charged violations. Following the issuance of the order respondent filed motions to dismiss and for a more definite statement, which were withdrawn during the course of the hearing by respondent's counsel.

Respondent holds common carrier certificate of public convenience and necessity #358 issued by this commission on September 28, 1950 authorizing the transportation over the public highways of this state of the following—"freight, to, from and between Fort Lauderdale, Florida and Miami, Florida, and intermediate points over state road #5, and as alternative routes over state road #84 from Fort Lauderdale to state road #7, thence over state road #7 to Miami, Florida."

At the hearing it was stipulated by all parties of record that the operations being conducted by respondent outside the territorial scope of its certificate #358 are in interstate commerce in Florida; that said certificate is the only authority issued by this commission which it holds; that respondent does not hold a certificate or permit by the Interstate Commerce Commission authorizing operations in Florida but that it relies solely upon section 206(a), part II, of the Interstate Commerce Act as its authority to conduct the operations which it is conducting in interstate commerce in Florida beyond the territorial scope of its Florida certificate. Pertinent provisions of section 206(a) follow—

> Except as otherwise provided in this section and in section 210(a), no common carrier by motor vehicle subject to the provisions of this part shall engage in any interstate or foreign operation on any public highway, or within any reservation under the exclusive jurisdiction of the United States, unless there is in force with respect to such carrier a certificate of public convenience and necessity issued by the commission authorizing such operations: provided, however, . . . *And provided further, that this paragraph shall not be so construed as to require any such carrier lawfully engaged in operation solely within any State to obtain from the Commission a certificate authorizing the transportation by such carrier of passengers or property in interstate or foreign commerce between places within such State if there be a board in such state having authority to grant or approve such certificates and if such carrier has obtained such certificate from such board. Such transportation shall, however, be otherwise subject to the jurisdiction of the Commission under this part.* (Italics added.)

Respondent's operations are solely within the borders of this state and, its only authority under its intrastate certificate issued by this commission is for the territory lying between Fort Lauderdale and Miami, a distance of approximately 22 miles. It has registered its intrastate certificate with the I. C. C. and it contends under its interpretation of the above quoted provision of section 206(a) that it now as a matter of right has authority to operate in interstate commerce throughout the entire state without further authority either from this commission or the I. C. C. We cannot agree with such contention.

At the conclusion of the hearing we requested briefs on the questions involved in this proceeding. Respondent filed a brief but confined it entirely to argument that this commission has no jurisdiction over the matter. Respondent did not cite a single authority in support of its construction of the foregoing statute.

If respondent is incorrect in its interpretation of the federal statute and is confined thereunder to the same territory in its interstate operations as are prescribed in its intrastate certificate #358, then it must not only have a certificate or permit issued by the I. C. C. authorizing such operations but it must also have a certificate of registration of its interstate authority issued by this commission under Rule 3 of our rules and regulations governing transportation of property. See Lowe v. Stoutamire (Fla.), 166 So. 310, and State ex rel R. C. Motor Lines v. Florida Railroad Commission (Fla.), 166 So. 840. Rule 3 states in part as follows—

> Interstate carriers transporting for compensation engaged exclusively in interstate commerce by virtue of a certificate of public convenience and necessity or permit from the Interstate Commerce Commission, must apply for and obtain a certificate of registration on forms provided by this commission, and all motor vehicles used in such carriage must be registered with and authorized for use by this commission.
>
> Applications for certificates of registration when properly filed will be granted as a matter of course, and continued supervision of interstate carriers will be limited to the control of routes traveled, type, weight, size and method of operation of motor vehicles, proper accounting and payment of the compensatory mileage tax required by law and the giving of a bond to provide for protection of third parties from injuries due to negligence of interstate operators in the use of the highways and other police regulations required by law and rules and regulations of this commission. No cargo insurance will be required. Proof that bond or insurance is filed with Interstate Commerce Commission adequate to protect the operation on the highways of this state together with a description of such bond or insurance will be accepted in lieu of said bond . . .

If respondent is incorrect in its interpretation of the federal statute then, its operations in Florida beyond the territorial scope of its certificate #358 are in violation of the terms of its certificate, of chapter 323 of the statutes, and of rule 3 of the rules and regulations just quoted.

We come now to the question of the interpretation of section 206(a). The I. C. C., the federal agency charged with the administration of the Interstate Commerce Act, has interpreted the statute to mean that an intrastate carrier registering its intrastate certificate with it is subject to the same territorial limitations in

its transportation in interstate commerce as are imposed on its intrastate authority. See the decision of that commission in Ex parte no. MC-37 (Commercial Zones and Terminal Areas), 54 M.C.C. 16, 102, where it is said—

> Under the second proviso of section 206(a) of the act, a common carrier by motor vehicle "lawfully engaged in operation solely within a single State" may perform corresponding transportation in interstate or foreign commerce without compliance with the certificate requirement of that section though it is otherwise subject to regulation under part II of the act. Such interstate operations, commonly referred to as "registered" operations, are subject to all limitations as to commodities, territory, or otherwise inherent, or specifically provided for, in the "registered" intrastate certificate. . . . In determining the territorial limits of its terminal area at any particular point, a "registered" carrier is, however, bound, as are other carriers, by the fact that it cannot in any instance establish a terminal area which exceeds its operating authority. That authority in the case of a "registered" carrier consists of a combination of the carrier's intrastate certificate and the statute *and is necessarily subject to any territorial limits expressly provided for, or inherent in, its intrastate certificate.* It follows that the territorial scope of such intrastate authority, as affects the performance of incidental collection and delivery services in territory immediately adjacent to any specifically authorized municipality, must be determined not by the rule of construction herein laid down for holders of interstate certificates or permits but rather *by whatever rule of construction the State places upon its intrastate certificate.* Thus, if an intrastate certificate authorizing service, for example, at a particular municipality is construed by the State as authorizing service only within the corporate limits of the city or only at adjacent points within territory less extensive than the commercial zone of that city as defined by this Commission, a carrier performing interstate transportation under a "registration" of any such intrastate certificate *would be subject to the same territorial limitations in its interstate operation and could not itself serve any point beyond those limits. . . ."* (Italics added.)

Also, see the I. C. C. decision (Division 5), In re Jet Cartage Co., 7 F.C.C. 458, which places the same interpretation upon said statute.

In addition to the I. C. C. decisions, the federal district court, southern district of Texas (a three-judge district court) in Gulf Coast Motor Freight Lines, Inc. v. U. S., 35 Fed. Supp. 136, apparently applied the same interpretation to the federal statute as that applied by the I. C. C. in Ex parte no. MC-37 above. There, in an opinion by Circuit Judge Hutcheson, the court said—

> The proviso could certainly have been more clearly drawn. But, construed within itself and in relation to the whole act as well as in the light of conditions existing when it was passed, it is plain enough that what the proviso purports to do, and what it does is, to exempt from the necessity of obtaining an interstate certificate of public convenience and necessity as to interstate carriage between points in the

state, every carrier holding a state certificate of public convenience and necessity to carry *between those points*. And the reason for this is not hard to see. For "such" carrier having already satisfied its burden of showing the existence of public convenience and necessity for its service as a carrier *between those points,* ought not to be required to make a showing of public convenience and necessity as to the same route merely because they haul *between those points*, goods moving both in inter and in intrastate commerce. (Italics added.)

At the conclusion of the hearing in this cause, the attorney for respondent carrier requested that the commission hold this matter in abeyance awaiting action by the Interstate Commerce Commission. In the meantime, it appears the respondent wishes to continue its interstate operations over the highways of this state beyond the territorial limits of its intrastate certificate. We can see no reasonable basis for allowing such operation to continue. We shall, however, hold this docket open for further consideration should the Interstate Commerce Commission or a proper court at some future time rule that respondent has the interstate rights which it claims, but we consider such operations should in the meantime be terminated. Certainly this commission has full authority under the police powers of the state of Florida to enter such an order.

It is therefore ordered that South Florida Freightways, Inc. immediately cease all interstate operations in the state of Florida beyond the territorial scope of certificate of public convenience and necessity #358 until such time as it obtains proper authority therefor from the Interstate Commerce Commission or until it obtains a final ruling by that commission that it has authority under the Interstate Commerce Act to conduct operations in Florida beyond the territorial scope of certificate #358. Jurisdiction of this cause is retained for such further proceedings as the commission may in the future deem advisable.