388 So.2d 556 (1980)
REPUBLICAN STATE EXECUTIVE COMMITTEE, a Political Committee Established Pursuant to Laws of Florida, Petitioner,
v.
Robert GRAHAM, As Governor of the State of Florida, Respondent.
No. 59616.
Supreme Court of Florida.
September 17, 1980.
Robert J. Vossler, Tallahassee, for petitioner.
Robert C. Josefsberg, Gen. Counsel, and David W. Wilcox, Asst. Gen. Counsel, Tallahassee, for respondent.
Barry Richard of Roberts, Miller, Baggett, LaFace, Richard & Wiser, Tallahassee, for Edward J. Healey, intervenor.
*557 John H. French, Jr. of Messer, Rhodes, Vickers & Hart, Tallahassee, for Democratic Executive Committee of Florida, amicus curiae.
SUNDBERG, Chief Justice.
By petition for writ of mandamus, the Republican State Executive Committee requests this Court to direct Governor Graham to call a special primary election as required by section 100.111(3)(a), Florida Statutes (1979),[1] because an alleged vacancy in nomination has occurred within the contemplation of the above statute. Jurisdiction is asserted under article V, section 3(b)(8), Florida Constitution (1980). The central issue is whether a vacancy in nomination within the purview of the statute can occur after time for qualification has closed but prior to the first primary election.
Dr. Ronald E. Giddens was duly qualified as a Republican candidate for membership in the Florida House of Representatives, District 81. At the close of qualifying on July 22, 1980, no other individuals had qualified as Republican candidates for District 81. On July 29, 1980, Dr. Giddens submitted a letter of withdrawal from the race to the secretary of state. On July 31, 1980, the Republican Party requested that a special primary election be called. The withdrawal was reaffirmed under oath on August 22, 1980, and accepted by the secretary of state. The Governor has declined to call a special primary.
Section 100.111(3)(a), Florida Statutes (1979), provides a method for selecting nominees for political parties when a "vacancy in nomination" has occurred prior to September 15 in the year of a general election.[2] Petitioner contends that section 100.111(3)(a) must be read in conjunction with section 101.252(1), Florida Statutes (1979), which states that when only one candidate of a political party qualifies, that candidate is the party's nominee. Petitioner further asserts that since the Republican Party's sole qualifier withdrew after close of time for qualification the Governor must call a special primary election because, by virtue of section 101.252(1), a sole qualifier is automatically a party's nominee, and a "vacancy in nomination" has therefore occurred.
The Governor argues that no vacancy can occur prior to the first primary election on September 9, 1980. He bases this argument on the assertion that section 101.252, Florida Statutes (1979), does not effectuate the nomination of an unopposed candidate on the day qualification closes. The Governor supports his position by relying on State ex rel. Chamberlain v. Tyler, 100 Fla. 1112, 130 So. 721 (1930), which found that no vacancy in nomination occurred when a political party held a primary election in which there was no candidate for the office. For the following reasons, we agree with petitioner's contentions.
Respondent's position ignores the unambiguous terms of section 101.252(1), Florida Statutes (1979):
Any candidate for nomination who has qualified as prescribed by law is entitled *558 to have his name printed on the official primary election ballot. However, when there is only one candidate of any political party qualified for an office, the name of the candidate shall not be printed on the primary election ballot, and such candidate shall be declared nominated for the office. (Emphasis added.)
The statute clearly states that if there is only one candidate at the close of qualification, that candidate is automatically nominated for office. We interpret the statute in this manner for the following three reasons. First, the rest of the election laws are silent both as to who shall declare an unopposed candidate to be a nominee and when this declaration is to be made. The Elections Canvassing Commission declares the winner of contested positions only, and no mention of unopposed candidates is made in section 102.111(1), Florida Statutes (1979). There seems little justification for giving the nominating provision of section 101.252(1) effect in futuro when no clear future act of declaration is provided in the statute.[3] The practice of the Elections Canvassing Commission of including unopposed candidates in their official declaration does not change the failure of the statutes themselves to provide for, other than in section 101.252(1), an act declaring the nomination of unopposed candidates.[4] Second, if any meaning is to be given to the central import of section 101.252(1), i.e. unopposed, one can only look to the date that qualification closed, for it is only after this time that a contender can be called unopposed. This time is the focus of the statute, and its centrality implies an operative date from which an unopposed candidate is reclassified as a "nominee." Finally, even assuming respondent's argument were reasonable, it is no more reasonable than the construction urged by petitioner. If two equally reasonable constructions might be found, this Court in the past has chosen the one which enhances the elective process by providing voters with the greater choice in exercising their democratic rights:
[It is the] steadfast public policy of this State . .. that if the elective process is available, and if it is not expressly precluded by the applicable language, it should be utilized to fill any available office by vote of the people at the earliest possible date.
Spector v. Glisson, 305 So.2d 777, 782 (Fla. 1974). Accordingly, we believe our construction better serves the process by ensuring the largest choice of candidates through implementation of special elections.
Respondent's reliance on State ex rel. Chamberlain v. Tyler is misplaced, since the situation before us is quite different. The Republican Party had a candidate qualify for the office. State v. Tyler is concerned only with a situation in which no candidate ever qualified, and a vacancy is created thereby. See also In re Opinion to the Governor, 60 So.2d 321 (Fla. 1952).
Respondent points next to the statutory changes in section 100.111, Florida Statutes (1979), which eliminate any reference to the time in which a vacancy in nomination can occur. Argument is made that since the modern version deleted any reference to the necessity of holding a special primary for a vacancy which occurs "between the last date of filing" and the first primary, the legislature intended to eliminate special primaries for vacancies occurring during this time. But this contention carries little weight when *559 one looks at an earlier version, section 100.111(6)(d), Florida Statutes (1963):
In the event that death, resignation, withdrawal, removal or any other cause or event should cause a vacancy in office or nomination between the last date of filing for a special or local primary election or between the date of the first and second primary election or between the date of the second primary election and the general election shall leave no candidate for nomination... . (Emphasis added.)
It is evident that the present statute also eliminates references to special elections between the first and second primary, as well as between the last primary and the general election:
In the event that death, resignation, withdrawal, removal or any other cause or event should cause a party to have a vacancy in nomination which leaves no candidate for an office from such party... .
Following respondent's argument to its logical conclusion, there could be no time in which a special election could be called since specific references to any time were removed. We find this unacceptable. The earliest time that nomination can occur is at the close of qualification, and it is from this time that we conceive the legislature sought to protect the voters by ensuring the largest possible choice of candidates.
Nor do we accept the proposition that a special primary will cause confusion and unnecessary expense. Respondent concedes that the Governor must call a special primary if a vacancy occurs after the first primary election. But calling such an election after the primary and before the general election would in fact offer greater confusion than calling one soon after qualification, because in the former case less time would be provided in which the wheels of the elective process could turn. Additionally, these special elections have been regularly called in the past when the need arose. See Baker v. State ex rel. Caldwell, 122 So.2d 816 (Fla. 1960); In re Advisory Opinion to the Governor, 60 So.2d 285 (Fla. 1952); Executive Orders No. 72-39 and No. 72-40.
The time constraint imposed by the date of the general election is sufficiently critical that we find a mandamus proceeding in this Court to be an appropriate remedy. Division of Bond Finance v. Smathers, 337 So.2d 805 (Fla. 1976); Dickinson v. Stone, 251 So.2d 268 (Fla. 1971). Although the Governor's response reminds us of the admonition against indiscriminate issuance of the writ of mandamus voiced in Brown v. Firestone, 382 So.2d 654 (Fla. 1980), at the same time he points out that the issue involved is a straightforward question of law. Hence, the necessity for fact finding referred to in Brown does not here pose an impediment.
Because the dictates of the statutes and cases are unambiguous, the Governor has a clear legal duty to call a special primary election. See De Groot v. Sheffield, 95 So.2d 912 (Fla. 1957); State ex rel. R.C. Motor Lines v. Florida Railroad Commission, 123 Fla. 345, 166 So. 840 (1936); State ex rel. Globe & Rutgers Fire Insurance Co. v. Cornelius, 100 Fla. 292, 129 So. 752 (1930). We withhold, however, the issuance of a formal writ of mandamus in full confidence that the Governor will promptly perform his duties required by Chapter 100, Florida Statutes, in accordance with the decision of this Court.
Because of the exigent circumstances surrounding the necessity for promptly calling a special election no petition for rehearing will be entertained in this cause.
ADKINS, BOYD, OVERTON, ALDERMAN and McDONALD, JJ., concur.
ENGLAND, J., dissents with an opinion.
ENGLAND, Justice, dissenting.
I disagree with the conclusion my colleagues draw from their plain reading of section 101.252(1), although I read that section to mean precisely what they read it to mean. That is to say, we all agree that an *560 unopposed qualifier, denominated by the election law as a "candidate,"[1] "shall be declared nominated for the office" without the necessity of having his or her name printed on the ballot for the first primary election. My colleagues conclude from the mere fact that the nomination is declared in the statute that the unopposed candidate becomes the nominee when the period for qualifying ends. I do not. When that transformation occurs is the critical question in this proceeding, and that eventuality is neither mentioned nor implied in the statute itself. The statute plainly concerns itself solely with the administrative expense, confusion, and the clutter of candidates which goes into printing ballots for a primary election.[2]
A subsidiary question in this proceeding, which helps in the resolution of the primary question, is whether a "declaration" is essential to the transformation from candidate to nominee in order to give meaning to the words "declared nominated."
The construction of the election laws urged by the governor-that candidates are declared nominees after the primary election-provides a statutory scheme which is symmetrical and consistent. Neither of these attributes characterize a system which, no matter how reasonable, allows unopposed candidates to become nominees at the end of the period for qualifying while opposed candidates await the outcome of their primary contest. Various provisions of the election laws suggest that the symmetry was purposeful.
(1) Throughout the election laws the terms "candidate" and "nominee" are used meticulously. I have been unable to find any instance in which a nominee is authorized to perform any act before a primary election. In all instances, the term "nominee" is used to mean those persons who have been "declared" victorious at the end of a primary election.[3]
(2) The secretary of state must certify to the supervisor of elections, within 10 days after the closing date for qualifying, the names of all "candidates" for nomination.[4] The statute does not say all candidates and nominees.
Buttressing my view as to when an unopposed qualifier becomes a nominee is the requirement, not acknowledged by the majority, but nonetheless written into this "unambiguous" statute, that the qualifier be "declared" nominated. Under the election laws, the governor and cabinet act as the Elections Canvassing Commission to "determine and declare" who has been elected to office.[5] No comparable provision establishes the point of time between candidates and nominees for party office, but a legislative change in the wording of the election law suggests that the declaration is after the first primary election rather than simultaneous with the close of qualifying. The operative section we are called upon to construe-section 101.252(1)-first said that unopposed candidates "are hereby declared to be nominated,"[6] and later said that each such candidate "is declared nominated."[7] In 1963 the declaration was made prospective,[8] the way it reads now. Changes are *561 presumed to be purposeful.[9] I would construe the statute to give effect to that change, treating equally as "nominees" of the party all persons who move from the primary period into the period before the general election, whether previously opposed or unopposed.[10]
NOTES
[1] It should be noted that the duty imposed on the Governor by this statute is not related to the performance of his executive duties under the constitution. The ministerial duty lodged in the Governor could as easily have been imposed upon any other person, and indeed is presently shared with the secretary of state. See State ex rel. Bisbee v. Drew, 17 Fla. 67 (1879); see also Willits v. Askew, 279 So.2d 1 (Fla. 1973).
[2] Section 100.111(3)(a), Florida Statutes (1979), reads, in pertinent part:

In the event that death, resignation, withdrawal, removal or any other cause or event should cause a party to have a vacancy in nomination which leaves no candidate for an office from such party, the Governor shall, after conferring with the Secretary of State, call a special primary election and, if necessary, a second special primary election to select for such office a nominee of such political party. The dates on which candidates may qualify for such special primary election shall be fixed by the Department of State, and the candidates shall qualify no later than noon of the last day so fixed.
Section 100.111(3)(b), Florida Statutes (1979), sets out the procedure for a vacancy in nomination occurring after September 15.
[3] Respondent's grammatical argument that "shall be declared" must indicate some distant future event of declaration is slightly amiss because "shall" when used with the third person connotes compulsion or obligation. "Will" would be the proper choice of words to indicate simple future tense. See Webster's New World Dictionary, 1307 (2d ed. 1976).
[4] It is argued that section 99.061(3) sheds light on the timing of declaration of nomination. This section requires the secretary of state to certify the names of "qualified candidates for nomination or election" to the supervisor of elections. We note that throughout the election laws candidate for nomination and for election are used interchangeably. See § 102.141, Fla. Stat. (1979). Thus, the secretary of state would certify an unopposed candidate, nominated by the section 101.252(1) process, as a candidate for election (i.e. nominee) rather than nomination. This diversion is singularly unhelpful in determining when the unopposed candidate was indeed nominated.
[1] § 97.021(18)(d), Fla. Stat. (1979).
[2] See § 101.252(2), a parallel provision for the election of party executives, which is similarly directed solely at the administrative expense and convenience of the election process.
[3] Section 100.061, Florida Statutes (1979), states that candidates who receive a majority of votes cast in the first primary election "shall be declared" nominated, and section 100.091(3) states that the candidate with the highest vote total in the second primary election "shall be declared" nominated.
[4] § 99.061(3), Fla. Stat. (1979). The statute also requires the secretary to certify to the supervisor all candidates for "election," meaning those persons seeking to be executive committee members of their parties and for whom elections are held simultaneous with the presidential preference primary rather than the general election. See § 101.252(2), Fla. Stat. (1979).
[5] § 102.111(1), Fla. Stat. (1979).
[6] Ch. 6469, § 27, Laws of Fla. (1913).
[7] Ch. 26870, Laws of Fla. (1951).
[8] Ch. 63-99, Laws of Fla.
[9] Carlile v. Game & Fresh Water Fish Comm'n, 354 So.2d 362 (Fla. 1977).
[10] See § 100.051, Fla. Stat. (1979).