412 So.2d 360 (1982)
The FLORIDA SENATE, Petitioner,
v.
The Honorable D. Robert GRAHAM, Governor of the State of Florida, Respondent.
No. 61,877.
Supreme Court of Florida.
April 6, 1982.
Thomas W. McAliley and James R. Hubbard of Beckham & McAliley, Miami, and Neal P. Rutledge, Washington, D.C., for petitioner.
Betty J. Steffens, Gen. Counsel for Governor Graham, Tallahassee, for respondent.
Barry Richard of Roberts, Baggett, LaFace, Richard & Wiser, Tallahassee, for Fla. House of Representatives, interested party.
PER CURIAM.
The Senate of the State of Florida has filed a petition for declaratory judgment, writ of mandamus or other extraordinary relief questioning the constitutional authority of Governor D. Robert Graham to limit to less than thirty days a special apportionment session called pursuant to article III, section 16(a), Florida Constitution. The proclamation for the special apportionment session in issue in this proceeding limited the session to three days and two hours, the specific period being from 10:00 a.m., Friday, March 26, 1982, through noon, Monday, *361 March 29, 1982. The House of Representatives of the State of Florida has been allowed to appear as an interested party in support of the validity of the Governor's proclamation. The question presented is a matter of law, there being no factual disputes to be resolved. It is a matter that requires prompt resolution to avoid mootness and prevent an adverse effect on the functions of government. See Brown v. Firestone, 382 So.2d 654 (Fla. 1980).
Jurisdiction of this Court is sought under article V, section 3(b)(5) (mandamus) and section 3(b)(7) (all writs), Florida Constitution (1980). We conclude that we need not consider the appropriateness of directing an alternative writ of mandamus to the chief executive of this state because there is an independent basis for jurisdiction in this case.
We find jurisdiction to entertain this matter is vested under article V, section 3(b)(7), which provides in pertinent part that the Supreme Court "[m]ay issue ... all writs necessary to the complete exercise of its jurisdiction." By the extraordinary provisions of article III, section 16(b), (c) and (f), Florida Constitution (1968), this Court is vested with jurisdiction in the second year following each decennial census to either review a legislative plan of apportionment or actually devise a plan of apportionment depending upon the occurrence or non-occurrence of certain conditions precedent. The mode in which the Court will entertain apportionment is dictated by action or inaction of the legislature in adopting a joint resolution of apportionment, but, irrespective of its action, we will entertain the issue each ten years. Because jurisdiction of the issue of apportionment will vest in this Court with certainty in this year we have the jurisdiction conferred by article V, section 3(b)(7), to issue all writs necessary to the complete exercise and in aid of the ultimate jurisdiction imposed by article III, section 16(b), (c) and (f). Couse v. Canal Authority, 209 So.2d 865 (Fla. 1968). Petitioner alleges the invalidity of the Governor's action in calling the special apportionment session for a term of less than thirty days. If that call be constitutionally defective then the manner in which we entertain apportionment is directly affected. Furthermore, the validity of the special apportionment session could presumably be raised by the parties in the eventual proceedings before this Court pursuant to article III, section 16. For the foregoing reasons we exercise our discretion to invoke jurisdiction of this cause under article V, section 3(b)(7), Florida Constitution (1980).
After receiving expedited briefs and oral argument, we held in our order of March 27, 1982, that "the Governor has no authority to limit the apportionment session to less than thirty consecutive days and his only discretion is to determine when the period will commence within thirty days after the regular session adjourns." Florida Senate v. Graham, 412 So.2d 359 at 359 (Fla. 1982). This opinion expresses the reasons for our holding.
The constitutional provision in issue is article III, section 16(a), which provides:
Section 16. Legislative apportionment. 
(a) SENATORIAL AND REPRESENTATIVE DISTRICTS. The legislature at its regular session in the second year following each decennial census, by joint resolution, shall apportion the state in accordance with the constitution of the state and of the United States into not less than thirty nor more than forty consecutively numbered senatorial districts of either contiguous, overlapping or identical territory, and into not less than eighty nor more than one hundred twenty consecutively numbered representative districts of either contiguous, overlapping or identical territory. Should that session adjourn without adopting such joint resolution, the governor by proclamation shall reconvene the legislature within thirty days in special apportionment session which shall not exceed thirty consecutive days, during which no other business shall be transacted, and it shall be the mandatory duty of the legislature to adopt a joint resolution of apportionment. (Emphasis added.)
*362 The Governor contends that he has the authority to limit a special apportionment session, called pursuant to article III, section 16(a), to any length of time within the constitutionally-defined maximum period, just as he has the authority, delineated in In Re Advisory Opinion to the Governor, 206 So.2d 212 (Fla. 1968), to limit special sessions called pursuant to article III, section 3(c) and (d), Florida Constitution. He also contends that the history of article III, section 16, justifies his position. The Senate, on the other hand, contends that the Governor has no authority to limit a "special apportionment session" to less than thirty days because this type of session is called under the unique provisions of article III, section 16(a), and is quite different from a section 3 "special session."
We must reject the position of the Governor because in our view the two constitutional provisions dealing with special legislative sessions are different both in purpose and in content and the legislative history does not support the Governor's interpretation. The Governor contends that our construction and interpretation of article III, section 3(c) and (d), pertaining to other special sessions, as set forth in In re Advisory Opinion to the Governor, 206 So.2d 212 (Fla. 1968), by analogy gives the governor authority to limit a special apportionment session under section 16(a). We agree that he can limit a special session under section 3, but find that section is different from section 16. The governor is authorized, under article III, section 3(c) and (d), to call special legislative sessions, whenever he desires, to deal with any matters, other than apportionment, that he deems necessary. That section provides as follows:
(c) SPECIAL SESSIONS.
(1) The governor, by proclamation stating the purpose, may convene the legislature in special session during which only such legislative business may be transacted as is within the purview of the proclamation, or of a communication from the governor, or is introduced by consent of two-thirds of the membership of each house.
(2) A special session of the legislature may be convened as provided by law.
(d) LENGTH OF SESSIONS. A regular session of the legislature shall not exceed sixty consecutive days, and a special session shall not exceed twenty consecutive days, unless extended beyond such limit by a three-fifths vote of each house. During such an extension no new business may be taken up in either house without the consent of two-thirds of its membership. (Emphasis added.)
This section grants to the governor the absolute discretionary power to call a special session and also gives him the power to identify and limit the special session to a particular subject. Section 3(d) does place a maximum time limit on a special session by stating that this type of "special session shall not exceed twenty consecutive days." We construed this language in our advisory opinion to Governor Kirk, in which we concluded that, in view of the governor's total discretionary authority both to determine whether or not to call the legislature into session and to determine the subject matter of the call, he also had the discretion, exercised in the public interest, to specify that the session would last for a period of less than twenty days. 206 So.2d at 213-14. It should also be noted that the governor has traditional veto control over the product of a section 3(c) special session whereas he exercises no veto control over the product of a special apportionment session.
Article III, section 16(a), is limited to apportionment proceedings. This provision is distinctive because the governor has a mandatory duty to call a special apportionment session; he has no discretion as to the subject matter of the session; and, he has no authority to require the legislature to consider matters other than apportionment during the session. The purpose of the special apportionment session provision was clearly to grant the legislature one last opportunity to reach a legislative accord upon apportionment before transferring that function to the judicial branch. We emphasized, in In Re Apportionment Law, Senate Joint Resolution No. 1305, 263 So.2d 797 (Fla. 1972), that apportionment under *363 our present constitutional scheme is principally a matter for legislative consideration. Once the session is called, the governor is no longer involved in the apportionment process since the legislature's joint apportionment resolution is not subject to gubernatorial veto. Further, this Court acts only in a legal supervisory role unless the legislature fails to reach an agreement. If this occurs, the constitution provides that this Court then becomes the body that must establish an apportionment plan.
The constitutional provision creating the special apportionment session expressly states that the session "shall not exceed thirty consecutive days." Art. III, § 16(a). This time limitation was designed to avoid the problems which occurred in 1955-1956, under the apportionment provisions of the 1885 constitution,[1] when the legislature was technically in extraordinary apportionment session from June 6, 1955, until November 6, 1956, a period of 520 days. Journal of the Senate, Extraordinary Session 1956, at 1, 91; Journal of the House, Extraordinary Session 1956, at 1, 151. It is our view that this thirty-day maximum time period can be shortened only by the legislature, in its process, and not by any exercise of an asserted executive discretionary authority. The governor does have some discretion under article III, section 16(a), but that discretion is limited to a determination of when the session will commence within the thirty days after the regular session adjourns.
Because, under section 16(a), the governor has a mandatory duty to call a special apportionment session for the sole purpose of apportionment and he has no power or authority over its product, we find that our reasoning in construing section 3 is not applicable to the construction of section 16(a). The construction urged by Governor Graham could allow some future governor to manipulate the constitutional apportionment scheme provided in section 16 by limiting the special apportionment session to one day or less, so that it would be impossible for the legislature to carry out its "mandatory duty" as expressly imposed by this constitutional provision. The entire scheme of article III, section 16, belies the grant of such authority in the executive in the decennial apportionment process. Furthermore, should the governor have the authority to limit the special apportionment session, there either would be no review of the reasonableness of his action by the courts in which event a future governor could manipulate the process by severely limiting the special session or his actions would be subject to judicial review for reasonableness. We conclude that neither was contemplated by the framers and adopters of the 1968 constitution and the latter would offend the separation of powers provision in article II, section 3, Florida Constitution (1968),[2] by permitting the judicial branch to monitor the reasonableness of the actions of the chief executive.
Governor Graham argues that the constitutional history of article III, section 16, justifies his interpretation of this section. Part of this argument is based upon the records of the Florida Constitution Revision Commission of 1965-67. The wording of this section, as it was produced in original draft by the Legislative Committee of the Constitution Revision Commission in May of 1966, was as follows: "Said special session, *364 so called, shall expire when reapportionment is effected or thirty (30) days has expired, and shall consider no business other than reapportionment." Florida Constitution Revision Commission, 1965-67. Legislative Committee Draft, May 6, 1966, at 13: Florida State Archives, RG 005, Series 720, Box 1, file 22. A subsequent draft issued on June 14, 1966, eliminated this language and substituted the identical language which is contained in the constitution as adopted in 1968. Florida Constitution Revision Commission, 1965-67. Preliminary Draft of a Proposed Revised Constitution of Florida, June 14, 1966, at 9-10: Florida State Archives, RG 005, Series 720, Box 2, file 1. The Governor argues that if the legislature had intended that the special apportionment session last thirty days regardless of the circumstances, it would have so provided in accordance with that original draft. We disagree. First, the changes made in the wording were apparently not for the purpose of making a substantive change because the changes were made by the Style and Drafting Committee of the Constitution Revision Commission. Id. Second, it appears that the drafters of the constitution clearly intended the governor to be required to call a special thirty-day session under this provision, as adopted. In our view, that intent is clear because the official analysis submitted to the legislature in 1967, when the proposed constitutional provision was offered to it for adoption, and the analysis given to the people in November 1968, read as follows: "If the legislature fails to apportion during regular session the Governor is required to call a special 30 day session which has the duty to reapportion." Florida Constitution Revision Commission, 1965-67. Analysis of Proposed Constitution to be Introduced in the House of Representatives, July, 1967, at III-3: Florida State Archives, RG 005, Series 725, Box 1, file 12; (Senate document unavailable); Florida Legislature. Draft of Proposed 1968 Constitution, July 20, 1968, at 9: Florida State Archives RG 005, Series 725, Box 1, file 19. (Emphasis added.)
We fully understand the reasoning leading to the interpretation put on article III, section 16(a), by Governor Graham because of this Court's advisory opinion construing the general special session provision of article III, section 3(c) and (d). We conclude, however, that the clear intent and purpose of article III, section 16(a), is to require the Governor to reconvene the legislature in a special apportionment session for a period of thirty days, his only discretion being to determine when the period will commence within thirty days after the regular session adjourns. As stated in our original order of March 27, 1982, the call of the governor made on March 25, 1982, is contrary to this holding and is, therefore, invalid. Because the Governor has accepted our interpretation and order in this cause, no further proceedings are necessary.
It is so ordered.
SUNDBERG, C.J., and ADKINS, OVERTON, ALDERMAN, McDONALD and EHRLICH, JJ., concur.
EHRLICH, J., concurs with an opinion, with which ADKINS and ALDERMAN, JJ., concur.
BOYD, J., dissents with an opinion.
EHRLICH, Justice, concurring.
I concur with the well reasoned majority opinion. I would add, however, a further thought in support of the opinion of the Court.
Article III, section 3(d) provides that a special session of the legislature convened by the governor "shall not exceed twenty consecutive days," and article III, section 16(a) provides that a special apportionment session reconvened by the governor "shall not exceed thirty consecutive days." The language is identical except the number of days of the respective sessions. Yet as to one we say that the governor has discretion and may shorten the time, but as to the other, he may not. The answer to this apparent anomaly stems from the constitutional separation of powers between the executive and legislative branches of government.
*365 Article II, section 3 provides "The powers of the state government shall be divided into legislative, executive and judicial branches. No person belonging to one branch shall exercise any powers appertaining to either of the other branches unless expressly provided herein."
In the case of the special session, the governor's authority to shorten the session to one less than twenty days does not extend executive control over the legislative function. If the legislature does not finish the business which is in the purview of the governor's proclamation within the designated period of time, the authority of the legislature to enact or not to enact legislation has not been impaired or affected. Furthermore, the legislature has the power to expand a special session, if needed or to extend the call. In short, the authority to lessen the time of a special session does not really empower the governor to influence or otherwise control the enactment of legislation.
However, in the case of a special apportionment session, if the legislature fails to adopt a joint resolution of apportionment, it loses control over the matter of apportionment. It then passes to this Court, which is constitutionally mandated to perform what is otherwise a strictly legislative function. Consequently, the length of a special apportionment session is critical. It can be fatally so, insofar as the legislature is concerned, if the governor has the authority to tinker with the length of the session, because the legislature itself cannot extend the length of a special apportionment session. Thus, the authority of the governor to shorten the time of a special apportionment session would thereby effectively extend executive control over the legislative function of apportionment. This is constitutionally impermissible.
ADKINS and ALDERMAN, JJ., concur.
BOYD, Justice, dissenting.
The Senate seeks a writ of mandamus to compel the Governor to call a special apportionment session without attempting to limit its duration. Although I believe that the Governor was within his authority in issuing the call limiting the special session to three days and two hours and therefore would deny relief, I also believe that mandamus is the proper remedy. This Court has constitutional authority to issue writs of mandamus to state officials, including the Governor. Art. V, § 3(b)(8), Fla. Const.[*]; Republican State Executive Committee v. Graham, 388 So.2d 556 (Fla. 1980). The majority's attempt to avoid the issue of the "appropriateness" of the remedy of mandamus by relying on the "all writs" provision of article V, section 3 is unnecessary.
In 1968, Governor Claude Kirk sought an advisory opinion from this Court on the question of whether he could determine the duration of a special legislative session within the constitutional maximum length of twenty days. This Court's response, In Re Advisory Opinion to the Governor, 206 So.2d 212 (Fla. 1968), construed the constitutional authority of the Governor regarding the convening of special sessions under a provision of the 1885 Constitution corresponding to present article III, section 3(c) and (d). The constitution said that special sessions called by the Governor were not to exceed twenty days. The Court held that the Governor, in calling a special session, had discretion to limit the duration thereof to a number of days not to exceed twenty. The decision was grounded on the constitutional authority of the Governor to determine that the public interest would best be served by a session lasting for a period of time less than the constitutional maximum. Consistency and logic require that we apply the same principle now under article III, section 16.
The Governor is accountable directly to the people for his stewardship in office. It *366 is within his discretion as chief executive to determine the optimal length of a special session within the constitutionally imposed maximum length. It has been estimated that when the Legislature is in session, the cost to the taxpayers is $30,000 per day. The Governor is the chief guardian of the taxpayers' money. Furthermore, the Governor is in position to know the complexity of matters the Legislature must deal with, including apportionment, and the length of time necessary for the two legislative houses to reach agreement.
The majority opinion correctly points out that an alternative draft of article III, section 16(a) was considered during the process that produced the constitutional revision of 1968. A proposal that would have required the special apportionment session to last thirty days or until the legislature chose to adjourn was rejected in favor of the language now appearing in article III, section 16(a). Unlike the majority, I find this piece of legislative history to be very compelling on the question of which construction to adopt.
The majority also points out that when the 1968 revision was submitted to the electorate for approval, it was accompanied by a short explanation that supports the majority's construction. I believe, however, that we must look directly at the constitutional language adopted by the people, and not at a short statement or summary, not part of the constitution, that was made available to the voters at the time of adoption.
For these reasons I must respectfully dissent.
NOTES
[1] The pertinent language of article VII, section 3, Florida Constitution (1885), provided:

In the event the Legislature shall fail to reapportion the representation in the Legislature as required by this amendment, the Governor shall (within thirty days after the adjournment of the regular session), call the Legislature together in extraordinary session to consider the question of reapportionment and such extraordinary session of the Legislature is hereby mandatorily required to reapportion the representation as required by this amendment before its adjournment (and such extraordinary session so called for reapportionment shall not be limited to expire at the end of twenty days or at all, until reapportionment is affected, and shall consider no business other than such reapportionment).
[2] Article II, section 3, provides:

The powers of the state government shall be divided into legislative, executive and judicial branches. No person belonging to one branch shall exercise any powers appertaining to either of the other branches unless expressly provided herein.
[*] "The supreme court:

(8) May issue writs of mandamus and quo warranto to state officers and state agencies."