443 So.2d 253 (1983)
Martin FINE, Petitioner,
v.
George FIRESTONE, Respondent.
No. AT-334.
District Court of Appeal of Florida, First District.
December 16, 1983.
*254 Arthur J. England, of Steel, Hector & Davis, and Irwin J. Block and Stuart L. Simon, of Fine, Jacobson, Block, Klein, Colan & Simon, Miami, for petitioner.
Jim Smith, Atty. Gen., for respondent.
Robert E. Gibson, Tallahassee, amicus curiae.
Dennis M. O'Connor, Coral Gables, amicus curiae for Floridians for Tax Relief, Florida Citizens for Tax Relief, Limit Government Committee, and George Schultz, Ed Havill and Y.Y. Phillips, Jr.
Steven A. Been and C. Anthony Cleveland, Tallahassee, for amicus curiae Florida Ed. Ass'n/United, American Federation of Teachers, AFL-CIO.
Judith A. Brechner, Tallahassee, amicus curiae for Ralph D. Turlington.
Joseph W. Little, Gainesville, amicus curiae.
Bruce Rogow, Fort Lauderdale, amicus curiae for American Civil Liberties Union Foundation of Florida.
Joseph Maloney, Sacramento, Cal., and James F. Pollack, Coral Gables, amicus curiae for Pacific Legal Foundation.
Earl B. Hadlow and Robert J. Winicki, Jacksonville, amicus curiae for Southeastern Legal Foundation, Inc.
WENTWORTH, Judge.
Petitioner seeks an unspecified extraordinary writ directing the Secretary of State to remove a proposed constitutional amendment from the ballot for the November 1984 general election. The proposed amendment is a revenue limitation measure[1] *255 for which the Secretary has issued a Certificate of Ballot Position after verifying that the submitted initiative form was signed by the requisite number of electors. We find that petitioner has failed to demonstrate entitlement to the relief requested, and the petition is therefore denied.
Relief by extraordinary writ, which the petitioner seeks,[2] is available only when no other adequate remedy exists, see Shevin ex rel. State v. Public Service Commission, 333 So.2d 9 (Fla. 1976), and only upon a "straightforward question of law" which does not involve fact-finding. See Republican State Executive Committee v. Graham, 388 So.2d 556 (Fla. 1980). Not only does the petition in this case involve speculative assertions which require fact-finding,[3] but it also appears *256 that petitioner has available an adequate remedy by an action for declaratory judgment or an injunction in the circuit court. See e.g., Floridians Against Casino Takeover v. Let's Help Florida, 363 So.2d 337 (Fla. 1978); Weber v. Smathers, 338 So.2d 819 (Fla. 1976); Adams v. Gunter, 238 So.2d 824 (Fla. 1970); Rivera-Cruz v. Gray, 104 So.2d 501 (Fla. 1958).[4] Since an adequate remedy is otherwise available and more than a "straightforward question of law" is presented, petitioner has failed to establish a predicate for relief by extraordinary writ.[5]
Because we elect to certify the issues presented for Florida Supreme Court review as questions of great public importance,[6] we also treat briefly the substance of petitioner's argument, in the interest of judicial experience. Assuming, therefore, that the petition presents issues now cognizable in this court, we would still decline to grant the relief requested. In the context of a pre-election challenge the standard to be applied is whether the proposed amendment is "clearly and conclusively defective." See Floridians and Weber, supra. We would find that petitioner has not met this standard and that judicial intervention prior to submission of the proposed amendment to the electors is therefore inappropriate.
Article XI, Section 3, Florida Constitution, provides that:
The power to propose a revision or amendment of any portion or portions of this constitution by initiative is reserved to the people, provided that, any such revision or amendment shall embrace but one subject and matter directly connected therewith.
This provision imposes a functional, rather than locational, restraint on the effective scope of an initiative measure. See Floridians, supra.[7] Petitioner asserts that the proposed amendment in the present case is confusing and inoperable, and subverts the legislative function while rendering the government "functionally inoperative." Petitioner culminates this broad-based attack with the further assertion that the proposed amendment is "tantamount to a revision of the entire constitution" and thereby violates Article XI, Section 3. But *257 as Floridians establishes, under Article XI, Section 3,
... substantial effect by the initiative proposal upon any other section or article of the Constitution becomes irrelevant. And, of course, `conflict' with existing articles or sections of the Constitution can afford no logical basis for invalidating an initiative proposal.
Floridians also indicates that the one subject limitation should be viewed broadly, whereby "widely divergent rights and requirements" may be embraced within a single subject area, and that the judiciary should apply a "pragmatic common sense judicial philosophy" in this regard. Applying this pragmatic common sense approach, we would find that the proposed amendment in this case contains various elements within the ambit of the single subject of revenue limitation, and that petitioner has not established that the proposal is "clearly and conclusively defective" within the purview of Article XI, Section 3, Florida Constitution.
Petitioner also asserts that the proposed amendment violates the federal constitution's guarantee of due process of law. Federal constitutional constraints have been held applicable to initiative petitions and ballot referenda, see Citizens Against Rent Control v. City of Berkeley, 454 U.S. 290, 102 S.Ct. 434, 70 L.Ed.2d 492 (1981), and due process requires that an enactment not be unreasonable, arbitrary, or capricious, and that the means selected shall have a real and substantial relation to the object sought to be attained. Nebbia v. New York, 291 U.S. 502, 54 S.Ct. 505, 78 L.Ed. 940 (1934). But as Dade County v. Dade County League of Municipalities, 104 So.2d 512, 515 (Fla. 1958), indicates, in the context of a proposed ballot measure,
When a proposal ... is assaulted on the grounds that it violates the Constitution, the courts will not interfere if upon ultimate approval by the electorate such proposal can have a valid field of operation even though segments of the proposal or its subsequent applicability to particular situations might result in contravening the organic law.
Also see Gray v. Winthrop, 115 Fla. 721, 156 So. 270 (1934); Gray v. Moss, 115 Fla. 701, 156 So. 262 (1934); Rivergate Restaurant Corporation v. Metropolitan Dade County, 369 So.2d 679 (Fla. 3d DCA 1979). Such is the applicable rule "even though it might ultimately become necessary to determine that particular aspects" of the amendment are unconstitutional. Dade County League of Municipalities, supra. In the present case petitioner has not established that the proposed amendment is so patently unconstitutional in its entirety as to be without any valid field of operation, and petitioner's due process challenge is therefore premature.
While we decline to direct the removal of the proposed amendment from the general election ballot, such action does not preclude petitioner from otherwise seeking appropriate relief either prior to the election or thereafter if the amendment is ultimately adopted by the electors. If such other relief is sought this opinion should not be construed as expressing any view as to whether petitioner has met the burden applicable in such proceeding.
In accordance with Fla.R.App.P. 9.030(a)(2)(A)(v), we hereby certify to the Supreme Court the following as a question of great public importance:
WHETHER IN THE CIRCUMSTANCES PRESENTED THE PROPOSED CONSTITUTIONAL AMENDMENT IS SUSCEPTIBLE TO CONSTITUTIONAL CHALLENGE BY PETITION FOR AN EXTRAORDINARY WRIT, AND IF SO:
WHETHER THE PROPOSED REVENUE LIMITATION AMENDMENT INVOLVED IN THIS CASE COMPORTS WITH ARTICLE XI, SECTION 3, FLORIDA CONSTITUTION, AND IF SO:
WHETHER THE PROPOSED REVENUE LIMITATION AMENDMENT INVOLVED IN THIS CASE IS PRESENTLY SUSCEPTIBLE TO A DUE PROCESS CHALLENGE UNDER THE FEDERAL CONSTITUTION.
*258 The petition for an extraordinary writ is denied.
LARRY G. SMITH and JOANOS, JJ., concur.
NOTES
[1] The proposed amendment, which would add a new section to Article VII of the Florida Constitution, provides as follows:

CITIZENS' CHOICE ON GOVERNMENT REVENUE:
(a) Revenue received by the state and by each taxing unit for each fiscal period shall be limited to the revenue limit for the preceeding fiscal period plus the annual adjustment and any ad valorem taxes on improvements due to new construction subject to assessment for the first time.
(b) For purposes of this section:
(1) revenue includes ad valorem taxes, other taxes and all other receipts, but excludes receipts from the United States government and its instrumentalities, bonds issued, loans received and the cost of investments sold. Receipts of agencies and instrumentalities and proprietary and trust funds shall be included in the revenue of the state or other taxing unit as appropriate.
(2) the annual adjustment for each fiscal period shall be the revenue limit of the preceeding fiscal period times two-thirds of the percentage change in the Consumer Price Index for All Urban Consumers, U.S. City Average, All Items, 1967 = 100, or successor reports, for the preceeding calendar year, as initially reported by the United States Department of Labor, Bureau of Labor Statistics; however for ad valorem taxes no annual adjustment increase shall exceed five percent of the ad valorem taxes of preceeding fiscal period.
(3) each fiscal period shall be twelve months.
(4) the initial revenue limit, for the first fiscal period beginning after the effective date of this section, shall be calculated by using the revenue in the fiscal period beginning in 1980, plus subsequent changes due to annual adjustments and ad valorem taxes on new construction, as if this section had been in effect.
(c) Revenue collected in excess of a revenue limit shall be placed in escrow until the following fiscal period, in which period it shall be deemed revenue received, and applicable rates shall be reduced in an amount reasonably calculated to comply with the revenue limits of this section.
(d) When authorized by vote of the electors of a taxing jurisdiction:
(1) revenue limits may be exceeded for specified purposes and amounts, for not longer than two fiscal periods;
(2) revenue limits may be exceeded to provide for principal and interest payments on designated bonds for specified purposes.
(3) a taxing unit may use its first fiscal period, in lieu of one beginning in 1980, for determining initial revenue limits.
(e) Revenue limits may be exceeded to the extent necessary to avoid impairment of obligations of contracts and bonds existing on the effective date of this section.
(f) Any taxpayer of the state shall have standing to bring suit to enforce this section and, if successful, shall recover costs and attorney fees from the taxing jurisdiction.
[2] Petitioner has not specified any particular writ, but mandamus would appear to be the writ most susceptible of affording relief.
[3] Petitioner characterizes this dispute as one in which "[n]o facts need be developed ... as the issues raised are pure questions of ... law." However, petitioner thereafter makes numerous factual assertions as to the potential effect of the proposed amendment. E.g., petitioner asserts that:

Governmental units in Florida at all levels, necessarily concerned with the continuation of their governmental functions and responsibilities, are expending time and resources to consider alternative methods by which they will function if the proposal is adopted by the voters... .
Any absolute cap on government, such as a limit set by reference to the amount of revenue raised by government in an earlier era, necessarily prevents the delivery of all constitutional guarantees to a non-static population... .
... [L]ocal and regional governments contemplated by Florida's Constitution necessarily lose their ability to respond to the everchanging and more particularized needs of Floridians at the local and regional levels... . As a consequence of including earmarked funds in the limitation, the proposal ... will keep certain historically-designated purposes fully funded, while forcing artificial limits (and consequently partial or non-funding) for all other needs... . The functions of local governance as they now exist will be stymied or delayed, and inevitably altered, as the courts are co-opted into the annual budget cycle and struggle to calculate annual revenue limits on an expedited basis... .
Underlying many of petitioner's factual assertions is the assumption that economic inflation will occur in future tax years, thereby decreasing the real value of future revenues; this is a speculative factual assumption which the judiciary, in the context before us, may not indulge.
[4] While the cited cases all involved appellate court review of legal challenges to proposed constitutional amendments, in each instance the legal challenge was initiated by an action in the circuit court.

Petitions for mandamus challenging the constitutionality of provisions in a general appropriations act have been entertained on the theory that the functions of government would be adversely affected without an immediate determination of the issue. E.g., Division of Bond Finance v. Smathers, 337 So.2d 805 (Fla. 1976); Dickinson v. Stone, 251 So.2d 268 (Fla. 1971); also cf. Brown v. Firestone, 382 So.2d 654 (Fla. 1980). However, such cases dealt with a pending effective statute, whereas the present action involves only a proposed ballot measure and legal challenge filed well prior to any potential effective date of the proposed measure. The present action thus also lacks the critical time constraint involved in Republican State Executive Committee v. Graham, 388 So.2d 556 (Fla. 1980).
[5] We also note with respect to the functions of the Secretary of State, as sole party respondent, that Rule 1C-7.09(1), Fla. Admin. Code, promulgated by the Secretary of State and unchallenged in this action, expressly provides that upon submission of a proposed amendment to the Division of Elections within the Department of State:

... No review of the legal sufficiency of the text of the proposed amendment is to be undertaken by the Division.
[6] Fla.R.App.P. 9.030(a)(2)(A)(v).
[7] "... [T]he evil sought to be avoided ... is `logrolling.' ...

[T]he purpose of aggregating for the measure the favorable votes from electors of many suasions who, wanting strongly enough any one or more propositions offered, might grasp at that which they want, tacitly accepting the remainder."
363 So.2d 337, 339.