Robert E. GIBSON, Plaintiff-Appellant,

and

Ed Havill, et al., Intervening Plaintiffs-Appellants,

v.

George FIRESTONE, et al., Defendants-Appellees.

No. 84–3422.

United States Court of Appeals, Eleventh Circuit.

Aug. 28, 1984.

James G. Mahorner, Herbert Kraft, Tallahassee, Fla., Dow N. Kirkpatrick, II, Atlanta, Ga., for plaintiff-appellant.

Mitchell D. Franks, Eric J. Taylor, Asst. Attys. Gen., Tallahassee, Fla., for defendants-appellees.

Before HILL and HENDERSON, Circuit Judges, and WISDOM *, Senior Circuit Judge.

JAMES C. HILL, Circuit Judge:

This appeal touches upon a wide variety of complex and important issues, one of which proves to be dispositive of the dispute: did the district court abuse its discretion in refusing to enjoin the Florida Secretary of State from complying with the Florida Supreme Court's mandate to remove from the upcoming general ballot a proposed constitutional amendment that the Florida Supreme Court found violative of the state constitution. We are unable to conclude that the district court abused its discretion in denying appellants' injunctive relief. Hence, we affirm.

An elucidation of the facts illustrates the difficult position in which appellants find themselves and the reasons why the federal courts are not empowered to remedy their plight. Appellants expended substantial sums in organizing support for a proposed amendment to the Florida Constitution.[1] After acquiring the necessary signatures of 600,000 state electors, appellants submitted their citizens initiative petition to the Florida Department of State for verification. The Secretary of State, finding that the petition satisfied the format requirements of state law, issued a Certificate of Ballot Position to the proposed amendment, certifying it for placement on the November 1984 general election ballot.

Shortly after the Secretary of State certified the amendment, an action was filed in the Florida District Court of Appeals seeking its removal.[2] The suit named Secretary Firestone as the defendant in interest and requested the Florida appellate court to issue a writ directing Secretary Firestone to remove the proposed amendment, primarily on the grounds that the proposal violated the state constitution's single-subject requirement for constitutional amendments. See Fine v. Firestone, 443 So.2d 253, 256–57 (Fla.Dist.Ct.App.1983).

Appellants then sought to intervene in the proceedings before the Florida District Court of Appeal. Arguing that Secretary Firestone had publicly voiced opposition to the proposed amendment and had filed a response disclaiming any intention of supporting the merits of the proposal, appellants asserted their right to intervene as the real parties in interest. Although Secretary Firestone did not oppose appellants'

---

* Honorable John Minor Wisdom, U.S. Circuit Judge for the Fifth Circuit, sitting by designation.

1. The proposed amendment is set out and discussed more fully by the Florida Supreme Court in its decision holding the amendment unconstitutional. See Fine v. Firestone, 448 So.2d 984 (Fla.1984).

2. Martin Fine instituted the action in the Florida appellate court. Although appellants named Fine as a defendant in their federal court suit, the district court dismissed Fine shortly before the final hearing on Secretary Firestone's motions to dismiss and for summary judgment. Appellants have not challenged that ruling; the record does not otherwise disclose the nature of Fine's interest in the outcome of this litigation.

motions to intervene, the state appellate court denied them party status but granted them leave to appear as amici curiae.

The Florida District Court of Appeal ultimately ruled that extraordinary relief was not available to direct the Secretary to remove the proposed amendment. *Fine v. Firestone*, 443 So.2d at 255–56. However, the appellate court elected to certify the case to the Florida Supreme Court because questions of great public importance were presented.[3]

The Florida Supreme Court accepted jurisdiction and ordered the proposed amendment removed from the general ballot. *Fine v. Firestone*, 448 So.2d 984, 993 (Fla. 1984). The court held that mandamus was an appropriate means for testing the constitutionality of the proposal, *id.* at 987, and that the amendment violated the state constitution's prohibition against multiple-subject constitutional amendments, *id.* at 987–93. Significantly, the court addressed only the state constitutional issue[4] and rested its decision entirely on its reading of article XI, section 3 of the Florida Constitution. *Id.* at 987.[5]

Appellants then filed the present suit in the United States District Court for the Northern District of Florida claiming that the state proceedings in which they were refused leave to intervene deprived them of their right to vote, violated their rights to due process and equal protection and impaired their contract rights under art. I, § 10 of the U.S. Constitution. The complaint alleged jurisdiction under 28 U.S.C. §§ 1331(a) and 1343(3), 42 U.S.C. § 1983 and art. I, § 10 and the First and Fourteenth Amendments of the U.S. Constitution, and in its prayer for relief, requested the district court to grant an "injunction against the Secretary['s] decertifying Proposition 1 or directing its recertification." The district court granted appellants' request for an advanced final hearing on their motion for injunctive relief and, after conducting such a hearing, held that appellants had failed to state a claim on which relief could be granted. Appellants now appeal.

Our task is two-fold. First, we must consider whether the allegations stated in the complaint are sufficient to invoke the limited jurisdiction of the federal courts. Second, we must decide whether appellants have stated a claim on which relief can be granted such that the district court abused its discretion by denying injunctive relief on that ground. To summarize our conclusions, we hold that the complaint properly invoked the subject matter jurisdiction of the federal courts; however, appellants have not stated a claim on which relief could be granted. Thus, the denial of injunctive relief does not constitute an abuse of discretion.

## I. JURISDICTION

■ Appellee questions whether the federal courts have jurisdiction to consider the claim stated by appellants' complaint. Federal subject matter jurisdiction is determined by the face of the well-pleaded complaint. *Phillips Petroleum Co. v. Texaco, Inc.*, 415 U.S. 125, 127–28, 94 S.Ct. 1002, 1003–04, 39 L.Ed.2d 209 (1974); *Gully v. First National Bank in Meridian*, 299 U.S. 109, 112–13, 57 S.Ct. 96, 97–98, 81 L.Ed. 70 (1936). Further, all well-pleaded allegations must be taken as true for purposes of determining the existence of federal jurisdiction. *See Goosby v. Osser*, 409

---

3. The appellate court opined that the proposed amendment was sound under Florida law. In particular, the court reasoned that the proposal was not subject to attack under the single-subject provisions of the state constitution, *see* Fla. Const. art. XI, § 3, because the Florida Supreme Court had indicated that the provision was to be read broadly and with a pragmatic approach. *See* 443 So.2d at 256–57.

4. The Court did not consider whether the proposal ran afoul of federal due process standards. *See id.* at 986 n. 1.

5. While appellants did not seek leave to appear before the Florida Supreme Court, perhaps because the appellate court upheld the proposal, they did proceed as amici at the behest of the court. Thus, the state courts had the benefit of appellants' arguments throughout the state proceedings.

U.S. 512, 521 n. 7, 93 S.Ct. 854, 860 n. 7, 35 L.Ed.2d 36 (1973) (citing authorities).

■ Here, appellants have alleged a deprivation of their first amendment right to vote as well as their fourteenth amendment rights to due process and equal protection. *See* Record on Appeal at 6 and 80. These allegations, whether sufficient to state a claim for relief, are adequate to invoke federal subject matter jurisdiction. *See Goosby v. Osser,* 409 U.S. at 521–22, 93 S.Ct. at 860–61. Thus, we find that appellants have stated a claim that is cognizable under 28 U.S.C. § 1343(3), the jurisdictional counterpart of 42 U.S.C. § 1983.[6]

## II. INJUNCTIVE RELIEF

The relief requested of the district court was an order "granting an injunction against the Secretary['s] decertifying Proposition 1 or directing its recertification." Record on Appeal at 11.[7] The clear effect of such relief, as appellants concede, would be to require the Secretary of State to disregard the decision of the Florida Supreme Court invalidating the proposed amendment; the Secretary cannot heed both orders. The question before this court, then, is whether the district court's refusal to grant injunctive relief consti-

tutes an abuse of discretion. *See Shatel Corp. v. Mao Ta Lumber and Yacht Corp,* 697 F.2d 1352, 1354 (11th Cir.1983); (grant or denial of injunctive relief rests within sound discretion of district court); *Gore v. Turner,* 563 F.2d 159, 165 (5th Cir.1977).

Appellants primarily rely on *Griffin v. Burns,* 570 F.2d 1065 (1st Cir.1978), and the authorities supporting the First Circuit's decision in that case. In *Griffin* candidates and voters in a local Rhode Island primary relied on a state statute authorizing the use of absentee and shut-in ballots in all local "elections." The Secretary of State and other election officials, reading the statute to include party primary elections, advertised the availability of such ballots for use in the local primary and issued those ballots to qualified applicants. After the absentee and shut-in ballots were tabulated and added to the other votes cast, the election board certified candidate Griffin as the winner. Candidate McCormick, who had received a majority of the votes cast at the polls but 15 fewer total votes than Griffin, challenged the use of absentee and shut-in ballots. Ultimately, the Rhode Island Supreme Court upheld McCormick's challenge, "finding no constitutional or statutory basis for allowing ab-

---

6. Because both parties have impressed upon this court the need for an early disposition of this appeal, we abbreviate our discussion of the jurisdictional issue and proceed to consider the merits of appellants' claims.

7. Appellants also asked the district court to "declare that [their] right to vote on Proposition 1 cannot be affected by straw man litigation." Record on Appeal at 11. In essence, appellants claimed that the state proceedings were nonadversarial, because Secretary Firestone declined to defend the merits of the proposed amendment, and, therefore, that the Florida Supreme Court decision should be declared void. *See* Record on Appeal at 152–54.

In a quite different context, this court has recognized the principle that a judgment produced by nonadversarial proceedings is a mere form and not binding on other courts. *See Aerojet-General Corp. v. Askew,* 511 F.2d 710, 720–21 (5th Cir.1975) (analyzing precedents). *Aerojet-General,* however, involved state proceedings instituted to avoid the effect of a federal court decision adjudicating title to land in Florida. Noting that the Deputy Attorney General for the state had admitted the nonadversari-

al nature of the state court proceedings, the Fifth Circuit held that it was not obligated to follow the state court ruling in favor of the federal court defendant. *Id.* at 7821. The present case, unlike *Aerojet-General,* does not turn on whether the prior state court decision is entitled to res judicata effect. Appellants were not parties to the proceedings in state court and cannot be bound by any judgment rendered there.

Absent an argument that the district court was bound by the Florida Supreme Court decision, appellants had no grounds for requesting the court to declare that decision void. Federal courts have no appellate review authority over judgments of state courts. *See, e.g., Chicago, R.I. & P.R.R. v. Stude,* 346 U.S. 574, 580–81, 74 S.Ct. 290, 294–95, 98 L.Ed. 317 (1954); *Reynolds v. Georgia,* 640 F.2d 702, 703 (5th Cir.), *cert. denied,* 454 U.S. 865, 102 S.Ct. 326, 70 L.Ed.2d 165 (1981). For this reason, appellants could only request injunctive relief; no declaration that the Florida Supreme Court's decision was void was available.

sentee and shut-in voters to cast their votes in a primary election," *id.* at 1068, and ordered that all such ballots be invalidated, resulting in the certification of McCormick as the primary winner. Griffin, the decertified winner, moved to reargue the case before the state Supreme Court and an attorney moved to intervene as amicus curiae on behalf of those whose ballots had been invalidated. However, the court denied both motions.

Griffin then filed suit in federal district court under 42 U.S.C. § 1983. He was joined by absentee and shut-in voters who had cast ballots in the local primary. The plaintiffs requested the district court to issue a temporary restraining order postponing the general election, a preliminary injunction invalidating the primary and an order scheduling a new primary and election. *Id.* at 1067–68. The court granted plaintiffs' requested relief, concluding that the federally-protected right to vote extended to primaries and that the arbitrary denial of that right affected the outcome of the local election. *Id.*

The First Circuit Court of Appeals affirmed. Significantly, the First Circuit rested its decision on the effect of the Rhode Island Supreme Court's decision on the voters' rights to participate in the primary. As the court characterized the constitutional claim involved,

> Appellees do not contend that Rhode Island was constitutionally required to provide for absentee or shut-in voting in party primaries.... Nor do they challenge the authority of the Rhode Island Supreme Court to construe the state's election laws so as to preclude such voting. Their claim is simply that Rhode Island could not, constitutionally, invalidate the absentee and shut-in ballots that state officials had offered to the voters in this primary, where the effect of the state's action had been to induce the voters to vote by this means rather than in person. The state's action is said to amount—in result, if not in design—to a fraud upon the absent voters, effectively

stripping them of their vote in the primary.

*Id.* at 1074 (citation omitted). Agreeing with the district court that the right to vote in primaries is constitutionally protected, the court concluded that federal court intervention was an appropriate response to the unfair procedures by which certain voters were denied that right. *Id.* at 1076.

The *Griffin* court analogized to *Briscoe v. Kusper*, 435 F.2d 1046 (7th Cir.1970). In *Briscoe* candidate nominating papers for city alderman elections were invalidated by the Chicago Board of Election Commissioners on the day before the scheduled election. The commissioners struck certain nominations on the ground that they contained improper duplicate signatures and failed to include middle initials for signatures on the accompanying petitions. In doing so, the commissioners announced a sharp break from prior policy and effectively precluded the candidacies of those who had relied on earlier Board interpretations. Under these circumstances, the Seventh Circuit held that candidates and voters had been unconstitutionally denied the right to participate in aldermanic elections by the last minute policy shift. The court declared those practices violative of the first and fourteenth amendments and enjoined the future use of such procedures. *Id.* at 1048, 1058.

Appellants argue that *Griffin* and *Briscoe* are indistinguishable from the present case, but we find two important distinctions. First, the federal rights vindicated by the First Circuit in *Griffin* and the Seventh Circuit in *Briscoe* centered on the first amendment right to vote and the closely related right to participate in the election process. In *Griffin* voters were actually stripped of their ballots after they had been cast and given no alternative means of voting in the primary, resulting in the victory of a candidate who had not received a majority of the votes cast. In *Briscoe* candidates for local office were, within hours of the preparation of ballots, removed from the ballot by an arbitrary, sudden change in policy, resulting in the

deprivation of both the candidates' and the nominating voters' rights to participate in the election. In this case, however, no voters have been denied the right to vote, nor have any candidates lost their right to participate in the election. The *Griffin* and *Briscoe* decisions vindicate rights universally recognized as the lynchpins of our democratic form of government: the rights of candidates to offer themselves for public office and the rights of voters to vote for or against those candidates. The rights alleged by appellants, conversely, derive from wholly state-created procedures by which issues that might otherwise be considered by elected representatives may be put to the voting populace. The state, having created such a procedure, retains the authority to interpret its scope and availability. Clearly, appellants can claim no constitutionally-protected right to place issues before the Florida electorate; any opportunity to do so must be subject to compliance with state constitutional requirements.[8]

■ More fundamentally, *Griffin* and *Briscoe* did not involve a request by state voters to reverse a decision by a state supreme court construing its own constitution. It is true that the First Circuit in *Griffin* effectively delayed the impact of the Rhode Island Supreme Court's interpretation of state law to allow voters to comply with that ruling, but the court did not order invalidated ballots counted. Appellants ask us to issue just such an order, one directing the Secretary of State to do what the Florida Supreme Court has declared violative of the state constitution.

Neither *Griffin* nor *Briscoe* supports application of a remedy so at odds with basic notions of constitutional jurisprudence and federalism. Although federal courts have broad equitable powers to remedy proven constitutional violations, injunctive relief must be tailored to fit the nature and extent of the established violation. *Haitian Refugee Center v. Smith*, 676 F.2d 1023, 1041 (5th Cir. Unit B. 1982) (citing cases). The violation appellants seek to establish, collusion between state officials to deny appellants access to state court proceedings, would not be remedied by an injunction directing Secretary Firestone to restore the proposed amendment to the upcoming general ballot.[9] They nevertheless persist in maintaining their right to an injunction requiring Secretary Firestone to certify their proposal for placement on the general ballot.

■ We cannot ignore the practical effect of an order granting appellants' requested relief. To issue such an order would be tantamount to a decision by this court that the Florida Supreme Court has misread, or misapplied the single-subject requirement of article XI, section 3 of the Florida Constitution. In no other way can we direct the Secretary of State to comply with the order requested by appellants, while allowing him to honor the judgment of the state's highest court. It is far too late to dispute the principle that state court decisions resting on adequate and independent state grounds are not subject to federal review. *Herb v. Pitcairn*, 324 U.S. 117, 125–26, 65 S.Ct. 459, 463, 89 L.Ed. 789

---

8. As we perceive it, appellants' alleged deprivation does not raise serious first amendment right to vote concerns. Appellants do not argue that they were denied the right to vote. They do claim that their first amendment associational rights encompass their efforts to secure a position on the general ballot for Proposition One. Those free association rights, appellants maintain, protect them against unreasonable burdens on ballot access. While we express no view on the scope of appellants' rights of free association in this context, we do not consider the Florida Supreme Court's judgment invalidating Proposition One to be an "unreasonable burden" on appellants' rights to ballot access.

9. While we must take appellants' well-pled allegations as true, we seriously question whether they have suffered any harm by being denied leave to intervene in the state suit. As amici, appellants were allowed to file all papers and make any arguments that parties to the suit could have made. Appellants conceded at oral argument that they fully expressed their views in the Florida Supreme Court. Thus, we find it difficult to understand the prejudice appellants allegedly suffered. Nevertheless, we assume for purposes of ruling on the propriety of the district court's ruling that appellants were prejudiced by the alleged collusive proceedings.

(1945); *see Wainwright v. Sykes*, 433 U.S. 72, 81, 97 S.Ct. 2497, 2503, 53 L.Ed.2d 594 (1977).[10] The district court did not abuse its discretion by applying that principle to deny appellants' injunctive relief. Hence, we

AFFIRM.

---

**10.** Appellants' plight closely resembles the situation landowners often encounter when government officials determine that public interest necessitates a change in the character of their neighborhood, *see, e.g., Woodland Market Realty Co. v. City of Cleveland*, 426 F.2d 955 (6th Cir. 1970) (commercial leaseholder's diminished property value occasioned by city's urban renewal project and consequent loss of customers does not constitute fourteenth amendment "taking"), or the predicament real estate developers face when agency officials promulgate stiffer regulations concerning development projects, *see, e.g., Deltona Corp. v. United States*, 657 F.2d 1184, 228 Ct.Cl. 476 (1981), *cert. denied*, 455 U.S.

1017, 102 S.Ct. 1712, 72 L.Ed.2d 135 (1982) (frustration of developer's investment-backed expectations by Army Corps of Engineers' stiffening of permit regulations does not amount to "taking"). Similarly, appellants' expenditures of funds and resources in reliance on their interpretation of prior Florida Supreme Court decisions does not, without more, rise to the level of a due process violation.